# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO. 4:16CV-00120-JHM

ESTATE OF ROBERT MATTHEW BRADLEY,                              PLAINTIFF
By his Administratrix, Lena Goins

v.

GERRY WRIGHT, Individually and in his
Official Capacity as Ohio County Jailer and
DEPUTY DEANNA CULBERTSON, DEPUTY
JACOB PHELPS, and OHIO COUNTY JAIL                             DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendants, Gerry Wright, individually and in his official capacity as Ohio County Jailer, Deputy DeAnna Culbertson, Deputy Jacob Phelps, and the Ohio County Jail, for summary judgment [DN 48]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

On August 7, 2015, Robert Matthew Bradley was arrested by the Kentucky State Police at approximately 4:47 p.m. and charged with failure to wear a seatbelt, failure to produce insurance card, driving on DUI suspended license, first offense, and operating a motor vehicle under the influence of alcohol/drugs, third offense. (Uniform Citation, DN 29-2.) The arresting officer took Bradley to the Ohio County Hospital for a blood draw to obtain evidence which would be used in the prosecution of Bradley. Bradley was booked into the Ohio County Detention Center ("OCDC" or "jail") at approximately 5:52 p.m. Deputies DeAnna Culbertson and Jacob Phelps were involved in the booking process with Bradley. Upon being booked into the jail, Bradley was loud and somewhat belligerent. Bradley walked into the jail without

assistance and had no difficulty moving about the booking area. He complied with all of the deputies' requests, including posing for a booking photograph, answering the standard medical questions, signing the medical form, signing the facility admission report and personal property intake form, and changing into jail attire without assistance. Both deputies were aware that he had first been taken to the hospital for a blood draw and that he was under the influence of alcohol or drugs.

At the conclusion of the booking process, Bradley was placed in a detoxification cell located by the booking area. After having been placed in the detox cell, Bradley expressed that he was hungry, and Deputy Culbertson prepared a plate of food and a glass of tea for Bradley. Bradley consumed all of the meal. Deputy Phelps collected the plate and glass at a later point in the night. In addition to the meal, Bradley requested he be allowed to use a telephone. Deputy Phelps permitted him to use the phone and assisted him in locating at least one telephone number. Bradley spoke with his brother, Virgil Langston, at approximately 6:00 p.m. on August 7, 2015. Bradley remained in the detox cell during the night.

Deputy Culbertson testified that inmates Kristen Geary and Candace Burden bonded out of the jail at 10:00 p.m. and 10:35 p.m. respectively. On both occasions, Deputy Culbertson checked on Bradley, and he was asleep and snoring. (Culbertson Aff. at ¶¶ 17-19.) Deputy Phelps testified that he conducted cell checks as reflected on the jail daily activity log and had other contacts with Bradley. Phelps testified that between regular cell checks and checks on Bradley when other inmates were booked into or bonded out of jail on August 7, 2015, Bradley would have been checked on at least on an hourly basis. (Phelps Aff. at ¶ 17.) Deputy Culbertson and Deputy Phelps' shifts ended between 11:00 and 12:00 p.m. Bradley was

discovered not breathing in the early morning hours of August 8, 2015.[1] The Kentucky State Police investigated the death and issued its report in July 2017. Neither party has provided the Court with a copy of the report.

Plaintiff, Estate of Robert Matthew Bradley, by his Administratrix Lena Goins, brought this action on September 26, 2016, for violations "of both [Bradley's] civil rights, [42] U.S.C. § 1983 and the Prison Litigation Reform Act, 42 U.S.C. § 1997." (Complaint at ¶7.) In the original complaint, Plaintiff asserted claims against Gerry Wright, individually and in his official Capacity as Ohio County Jailer, and the Ohio County Jail. Deadlines were extended multiple times in this action. In May 2018, Defendants filed a motion for summary judgment. In addition to filing a response, Plaintiff filed a motion for leave to amend the complaint to add claims against Deputies DeAnna Culbertson and Jacob Phelps.

On August 1, 2018, the Court granted leave to amend the complaint but rejected the amended complaint tendered with Plaintiff's motion finding that it did not clarify any of the claims brought against the original defendants or the new defendants. The Court required Plaintiff to file an amended complaint clearly and adequately identifying each claim Plaintiff is asserting against each Defendant sufficient to satisfy the Iqbal and Twombly guidelines. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Additionally, the Court denied Defendants' motion for summary judgment with leave to refile. On August 13, 2018, Plaintiff filed an amended complaint. After the newly filed amended complaint and additional discovery, Defendants now move for summary judgment again.

---

[1] Plaintiff represents that the Kentucky State Police report indicates that 10:30 p.m. on August 7, 2015, was the last time the video showed Bradley moving. Plaintiff argues that Bradley died at 10:30 p.m.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

"In order to make a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish a violation of an existing constitutional right by a person acting under color of state law." Muhammad v. Skinner, 193 F. Supp. 3d 821, 830 (E.D. Mich. 2016), appeal dismissed (Sept. 8,

2016)(citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978)). "Section 1983, however, does not confer any substantive rights but rather affords a means to 'vindicate rights conferred by the Constitution or laws of the United States.'" Muhammad, 193 F. Supp. 3d at 830 (quoting Aldini v. Johnson, 609 F.3d 858, 864 (6th Cir. 2010)). Here, Plaintiff alleges a Fourteenth Amendment deliberate indifference to medical need claim against Jailer Wright, Deputy Culbertson, and Deputy Phelps in their individual capacities and a failure to train and supervise claim against Jailer Wright in his official capacity and the Ohio County Jail.

### 1. Claims brought against Wright in his Official Capacity and Ohio County Jail

"Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 166 (1985) (quoting Monell v. Department of Social Services, 436 U.S. 658, 691 n. 55 (1978)). Plaintiff's official-capacity claim against Jailer Wright, therefore, is actually against Ohio County. See Lambert v. Hartman, 517 F.3d 433, 440 (6th Cir. 2008). Similarly, the claims against the Ohio County Jail must also be brought against Ohio County because the jail is not an entity subject to suit. See Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that since the county police department is not an entity which may be sued, the county is the proper party); Smallwood v. Jefferson County Gov't, 743 F.Supp. 502, 503 (W.D. Ky. 1990) (concluding that a suit against the fiscal court and judge executive is actually a suit against the county itself).

### 2. Municipal Liability

Ohio County seeks summary judgment on Plaintiff's municipal liability claim for failure to train and supervise. Under § 1983, a municipality can be held liable only if the plaintiff demonstrates that the injury suffered was a direct result of the municipality's official policy or

custom. Monell, 436 U.S. at 691. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id.; Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479–80 (1986)). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." Alkire v. Irving, 330 F.3d 802, 815 (6th Cir. 2003). Plaintiff alleges that Ohio County had a policy, custom, or practice of failing to train and supervise its deputy jailers.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). See also Meeks v. City of Detroit, Michigan, 727 Fed. Appx. 171, 2018 WL 1721761, at *9 (6th Cir. Apr. 9, 2018). To prevail on a failure-to-train claim, Plaintiff must show "(1) that a training program is inadequate to the tasks that the officers must perform; (2) that the inadequacy is the result of the [county's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." Brown v. Chapman, 814 F.3d 447, 463 (6th Cir. 2016) (quoting Plinton v. County of Summit, 540 F.3d 459, 464 (6th Cir. 2008)). A plaintiff may demonstrate deliberate indifference in two ways: "(1) by pointing to 'prior instances of unconstitutional conduct demonstrating that [Defendants] had notice that the training was

6

deficient and likely to cause injury but ignored it,' or (2) by alleging 'a single violation of federal rights, accompanied by a showing that [Defendants] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.'" Bennett v. Young, 2018 WL 1575828, at *6 (W.D. Ky. Mar. 30, 2018)(quoting Harvey v. Campbell County, Tenn., 453 Fed. Appx. 557, 562–63 (6th Cir. 2011). See also Shadrick v. Hopkins County, Ky., 805 F.3d 724, 738–39 (6th Cir. 2015).

Here, Plaintiff does not provide evidence of any previous instances where inmates at the OCDC have received constitutionally inadequate medical care in general or specifically related to the detox unit. Therefore, Plaintiff is proceeding under the second theory. "The second mode of proof is available 'in a narrow range of circumstances' where a federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'" Shadrick v. Hopkins County, Ky., 805 F.3d 724, 739 (6th Cir. 2015) (quoting Board of County. Comm'rs v. Brown, 520 U.S. 397, 409 (1997) and City of Canton v. Harris, 489 U.S. 378, 390 (1989)). See Winkler v. Madison County, 2018 WL 3121233, at *16–17 (6th Cir. June 26, 2018) (noting that a municipal defendant may be held liable if, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need").

For example, in Shadrick v. Hopkins County, the Sixth Circuit determined that "a reasonable jury could find that the potential risk of the commission of constitutional torts by LPN nurses who lack the essential knowledge, tools, preparation, and authority to respond to the recurring medical needs of prisoners in the jail setting is so obvious that [SHP]'s failure to

provide adequate training and supervision to those nurses constitutes deliberate indifference to the risk." 805 F.3d at 739-40.

Plaintiff argues that Ohio County is liable due to its failure to properly train its jail staff regarding proper detox housing and monitoring procedures. Specifically, Plaintiff argues that neither Deputy Phelps nor Deputy Culbertson had any training to deal with a detox inmate, including proper observation techniques, the timing of observations, and the completeness of observations. Additionally, Plaintiff identifies Deputy Phelps' testimony that at the time of Bradley's death Phelps had only been employed five months as a deputy jailer, had shadowed another officer, received in-house jail training, but had not received any outside training. Plaintiff further argues that both Phelps and Culbertson testified in their deposition that they did not observe Bradley every 20 minutes as required by Kentucky Administrative Regulations, 500 KAR § 3:060[2] (Jail Standards for Full-Service Facilities) and jail standards which reflect a lack of training by Ohio County. Additionally, Plaintiff points to Jailer Wright's testimony that he did not personally train the deputies. Instead, Wright testified that all deputies were required to obtain 16 hours of training a year by the state and also had personal training by other deputy jailers when they began employment.

Initially, the record reflects that the Ohio County Detention Center is certified by the Department of Corrections as a life safety jail facility. (Wright Dep. at ¶ 13.) A "life safety jail" means "any county jail and correctional or detention facility . . . operated by and under the supervision of a governing authority that does not house state prisoners pursuant to KRS

---

[2] 501 KAR § 3:060(2) provides in relevant part that
Jail personnel shall conduct and document direct in-person surveillance on an irregular schedule, at least every twenty (20) minutes on the following classes of prisoners:
(a) Suicidal;
(b) Mentally or emotionally disturbed, if housed in a single cell; or
(c) In detox cell.

501 Ky. Admin. Regs. 3:060

532.100." 501 KAR 13:010(3). The Kentucky Administrative Regulations require observation of inmates on an hourly basis for such a facility, even for inmates placed in detoxification cells. 501 KAR 13:010. In contrast, inmates with mental impairments or on suicide watch must be observed every 20 minutes. Culbertson and Phelps testified that they conducted cell checks on at least an hourly basis, either on regular rounds or when in the booking area to do paperwork to release or accept an inmate into the facility, as required by their training. (Culbertson Aff. at ¶¶ 17-19; Phelps Aff. at ¶ 17.) Plaintiff provided no support from either Kentucky regulations or Kentucky Department of Corrections policy that inmates in a detoxification cell in a life safety jail during the time period in question were required to be monitored every 20 minutes. The regulations cited by Plaintiff pertains to "full-service jails" which are jails that may house state prisoners pursuant to KRS § 441.055. 501 KAR § 3:010(11). No evidence exists that Ohio County housed state prisoners during the period in question.

Unlike Shadrick, the evidence reveals that Ohio County had a training program. Shadrick, 805 F.3d at 740. The record reflects that Culbertson had been employed at the jail since August 20, 1999, and had received the Department of Corrections mandated training each year that she was an employee of the jail, as well as in-house training. Wright testified that the training provided to deputy jailers covers a number of topics, including CPR/first-aid, issues relating to in-custody deaths, inmate medical issues training, mental health and suicide prevention training, booking and classification training, and training related to inmate safety and jail security issues. (Wright Dep. at ¶ 23.) In addition, Culbertson testified that she had received training on cell check requirements. (Culbertson Aff. at ¶ 30.) The record further reflects that Deputy Phelps had shadowed other deputies and received in-house training (Phelps Aff. at ¶ 21) and that both deputies were involved with booking and monitoring Bradley.

9

Plaintiff provides no support for her proposition that jail personnel received no training on monitoring inmates or that the training was insufficient. Plaintiff's expert, Ray Sabbatine, did not address the alleged inadequacy of the training or supervision of the jail deputies by Ohio County. In fact, Sabbatine acknowledged in his deposition that his opinions expressed in this case do not address training issues. (Sabbatine Dep. at 59.) See Shadrick, 805 F.3d at 741 (quoting Russo v. City of Cincinnati, 953 F.2d 1036, 1047 (6th Cir. 1992) ("Especially in the context of a failure to train claim, expert testimony may prove the sole avenue available to plaintiffs to call into question the adequacy of . . . training procedures.")). Furthermore, both the United States Supreme Court and the Sixth Circuit have consistently emphasized that "[m]ere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to prove liability." Miller v. Calhoun County, 408 F.3d 803, 816 (6th Cir. 2005). Here, Plaintiff does not explain how the quality of training received by jail staff from the Department of Corrections or in-house training put Ohio County on notice of the likelihood that deputy jailers would respond inadequately to an inmate's medical care, including care for inmates in a detoxification unit. See Winkler, 893 F.3d at 903.

Additionally, while Plaintiff argues that Ohio County failed to implement corrections mandated by the annual inspection report from the Kentucky Department of Corrections, Plaintiff offered no testimony or evidence regarding the alleged deficiencies or tendered any inspection reports from the Kentucky Department of Corrections alleging failures to properly supervise or train staff at the detention center. Plaintiff also refers to a videotape of Bradley during his incarceration at the OCDC and the Kentucky State Police report regarding Bradley's death. However, neither the videotape nor the report were offered into evidence by the Plaintiff.

Additionally, the training manuals or written policies of the OCDC were not submitted into evidence.

Based on the evidence presented, the Court finds that no genuine dispute of fact exists as to Plaintiff's failure-to-train claim against Ohio County.

### 2. Jailer Wright Individual Capacity Claims

Plaintiff asserts that the Defendant Jailer Wright in his individual capacity violated Bradley's Fourteenth Amendment right to adequate medical care. The record reflects that Jailer Wright had no personal involvement with Bradley's booking, housing placement, or supervision at the OCDC during any timeframe related to this case. In fact, it is undisputed that Jailer Wright was off-duty during the time that Bradley was at the OCDC.

It is well established that liability under a § 1983 claim cannot be based on a theory of respondeat superior. Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978). Instead, to impose supervisory liability, there must be a showing that the defendant either "'encouraged the specific incident of misconduct or in some other way directly participated in it.'" Sexton v. Kenton County Det. Ctr., 702 F. Supp. 2d 784, 792 (E.D. Ky. 2010)(quoting Doe v. Magoffin County Fiscal Court, 174 Fed. Appx. 962, 970 (6th Cir. 2006) (citing McQueen v. Beecher Community Schools, 433 F.3d 460, 470 (6th Cir. 2006))). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984).

Plaintiff argues in response to the motion for summary judgment that Jailer Wright did not train or supervise deputy jailers as to the alleged 20-minute jail standard for in-person surveillance of persons in a detox cell. According to Plaintiff, neither Culbertson nor Phelps had

11

any knowledge of that policy and, therefore, had not been trained on it. In support of Plaintiff's argument that summary judgment is not proper as to Jailer Wright on the § 1983 supervisory liability claim, Plaintiff cites Hedgepath v. Pelphrey, 520 Fed. Appx. 385 (6th Cir. 2013) and Shadrick v. Hopkins County, 805 F.3d 724 (6th Cir. 2015). These cases are inapplicable in determining supervisory liability for a Fourteenth Amendment deliberate indifference claim under § 1983. For example, in Hedgepath, the Sixth Circuit addressed whether qualified immunity should be granted against supervisory jailers for *state law* claims. In Shadrick, the Sixth Circuit examined whether, under the facts of that case, the medical provider Southern Health Partners ("SHP") – not a supervisory employee – could be held liable under § 1983 for a failure-to-train deliberate indifference claim and also whether SHP is protected by qualified official immunity from a state law negligence claim.

Here, Plaintiff has not provided evidence that Jailer Wright participated in the alleged misconduct or implicitly authorized, approved or knowingly acquiesced in the alleged deliberate indifference to medical care. Furthermore, "[t]he attempt to hold [Jailer Wright] liable in [his] individual capacity[] for [his] alleged failure to adequately train employees . . . 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" Harvey v. Campbell Cnty., Tenn., 453 Fed. Appx. 557, 563 (6th Cir. 2011) (quoting Phillips v. Roane County, Tenn., 534 F.3d 531, 543 (6th Cir. 2008)); see also Miller, 408 F.3d at 817 n. 3 (absent evidence of personal involvement in the underlying misconduct, failure-to-train claims against individual defendants are properly deemed brought against them in their official capacities, to be treated as claims against the county).

For these reasons, the Court finds that no genuine disputes of material fact exist on this claim, and summary judgment is appropriate.

### 3. Deputy Culbertson and Deputy Phelps Individual Capacity Claims

Defendants Culbertson and Phelps move for summary judgment on the claims against them arguing that the amended complaint does not relate back to the original complaint and, as a result, the new causes of action as to them are barred by the statute of limitations. In response to this argument, Plaintiff incorrectly argues that the Court previously addressed the issue of relation back in the estate's favor pursuant to Fed. R. Civ. P. 15(c). Instead, the Court declined to decide these issues finding they were premature and were more appropriately raised by Culbertson and Phelps in a motion to dismiss.

In Plaintiff's original motion for leave to amend the complaint, Plaintiff maintained that the addition of Deputies Culbertson and Phelps related back to the original complaint because the amended complaint was filed within one year of the date that she received the Kentucky State Police report which identified the deputies and their roles in this matter. Plaintiff conceded that there was no mistake in not suing the deputies. Instead, Plaintiff argued that there was no reasonable way to know or discover their names and/or roles in this matter until receipt of the KSP report. Plaintiff claimed that the estate timely brought actions against these individuals within one year of their identification. Plaintiff contended that the KSP investigation, by law, prevented her from having both the identity and information which would have been the basis of the claim against these individuals.

The statute of limitations for 42 U.S.C. § 1983 actions is governed by the limitations period for personal injury cases in the state in which the cause of action arose. Wallace v. Kato, 549 U.S. 384, 387 (2007). In Kentucky, § 1983 actions are limited by the one-year statute of limitations found in KRS § 413.140(1). Collard v. Ky. Bd. of Nursing, 896 F.2d 179, 182 (6th Cir. 1990). The statute of limitations for wrongful death claims brought under KRS § 411.130 is

13

also one year. Gaither v. Commonwealth, 161 S.W.3d 345, 346 (Ky. App. 2004)(quoting Conner v. George W. Whitesides Co., 834 S.W.2d 652, 653–654 (Ky. 1992)). KRS §413.180(1) extends the time for filing an action resulting in the death of a person for up to one year after the qualification of the decedent's personal representative. Connor, 834 S.W.2d at 655. Bradley died on August 8, 2015, and Plaintiff was appointed executrix of his estate on October 5, 2015. Accordingly, Plaintiff had one year following her qualification as executrix, or until October 5, 2016, to file suit against any remaining Defendants for Bradley's death. Plaintiff's motion for leave to amend the complaint was not filed until May 25, 2018, and is therefore untimely absent a relation back to the original complaint.

If a motion to amend a complaint is filed after the expiration of the statute of limitation, Fed. R. Civ. P. 15(c)[3] allows an amended complaint to relate back to the original date of filing. "The purpose underlying the 'relation back' doctrine is to permit amendments to pleadings when the limitations period has expired." Shillman v. United States, 2000 WL 923761 (6th Cir. June 29, 2000). However, relation back is only available when changing a party because there was "a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). See also Asher v. Unarco Material Handling, Inc., 596 F.3d 313, 318 (6th Cir. 2010) (emphasis in original).

Here, Deputy Culbertson and Phelps are clearly new parties. Plaintiff does not contend that there was some mistake regarding the identities of the new Defendants. To the contrary,

---

[3] Subsection (c) of Rule 15 states that an amendment to a pleading relates back to the original time of filing when:
    (A) the law that provides the applicable statute of limitations allows relation back;
    (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
    (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
        (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
        (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.
    Fed. R. Civ. P. 15(c)(1)(A)-(C).

Plaintiff asserts that she gained knowledge of their identities from the Kentucky State Police Report. The Sixth Circuit has indicated a plaintiff's lack of knowledge about a defendant's identity "does not constitute a 'mistake concerning the party's identity' within the meaning of Rule 15(c)[(1)(C)(ii).]" Moore v. Hopkins Cty., Kentucky, 2017 WL 3097530, at *3 (W.D. Ky. July 20, 2017) (quoting Moore v. Tennessee, 267 Fed. Appx. 450, 455 (6th Cir. 2008)). "Stated differently, relation back is permitted under current Sixth Circuit law when a plaintiff seeks to correct a misnomer or effect the substitution of defendants but not when a plaintiff attempts to name an additional defendant whose identity is discovered after the statute of limitations expired." Id. (quoting Hiler v. Extendicare Health Network, Inc., 2013 WL 756352, *3-4 (E.D. Ky. Feb. 26, 2013)); see also Ham v. Sterling Emergency Servs. of the Midwest, Inc., 575 Fed. Appx. 610, 615-17 (6th Cir. 2014); Brown v. Cuyahoga County, Ohio, 517 Fed. Appx. 431, 434 (6th Cir. 2013); Medley v. Shelby Co., Ky., 2015 WL 2041780 (E.D. Ky. Apr. 30, 2015) (Plaintiff did not make a "mistake" about which defendant to sue when he simply did not know whom to sue or opted not to find out within the limitation period.); Jadco Enterprises, Inc. v. Fannon, 2013 WL 6055170 (E.D. Ky. Nov. 15, 2013) ("Rule 15(c) does not allow a relation back when a plaintiff learns more about a case through discovery then attempts to broaden liability to attach new parties in addition to ones already before the court."); Cox v. Treadway, 75 F.3d 230 (1996)) (a plaintiff's lack of knowledge of the identities of the jail employees is not a reason to relate back after the statute of limitations has expired.)

Here, whether or not Plaintiff exercised due diligence in attempting to discover the names of the parties who allegedly denied Bradley medical care is not the question. Whether or not KSP was investigating Bradley's death likewise does not bear on whether the amended complaint relates back to the original complaint. Because Plaintiff waited until the last week of

15

the one-year limitations period to file the complaint, "that left no time to discover the identity of [the attending deputies] within the relevant time." Smith v. City of Akron, 476 Fed. Appx. 67, 69 (6th Cir. 2012). "Rule 15(c) offers no remedy for this problem." Id. Consequently, the amended complaint cannot relate back to the original complaint for purposes of applying the statutes of limitation to the claims asserted against the new defendants. As such, the claims against Deputy Culbertson and Deputy Phelps are time-barred and must be dismissed.

### B. Claim under Prison Litigation Reform Act

With respect to Plaintiff's claim under 42 U.S.C. § 1997, the Prison Litigation Reform Act, such an individual claim does not exist. "Plaintiff may not assert a cause of action under § 1997, because this statute only creates a cause of action for the Attorney General of the United States." McKenzie v. County of Erie, 2013 WL 5348084, at *2 (W.D.N.Y. Sept. 23, 2013); McDonald v. Rivera, 2008 WL 268345, at *11 (N.D.N.Y. Jan. 30, 2008); Stone v. GEO Group, Inc., 2018 WL 2187378, at *3 (D.N.M. May 11, 2018)("The PLRA is not sufficient to establish jurisdiction, as there is no private right of action under that statute."). Thus, summary judgment is granted on Plaintiff's PLRA claim.

### C. ADA Claims

Defendants move for summary judgment on Plaintiff's claim under the American with Disabilities Act. In response, Plaintiff concedes summary judgment is appropriate on this claim.

### D. State Law Claims

Having dismissed Plaintiff's federal claims, the Court declines to exercise pendent jurisdiction over Plaintiff's state law claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims

should be dismissed as well." Id. at 726.). Therefore, Plaintiff's pendent state law claims are dismissed without prejudice.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendants, Gerry Wright, individually and in his official capacity as Ohio County Jailer, Deputy Deanna Culbertson, Deputy Jacob Phelps, and the Ohio County Jail, for summary judgment [DN 48] is **GRANTED.** The federal claims against all the Defendants are dismissed. The state law claims are dismissed without prejudice.

.

*[signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: counsel of record

September 3, 2019